IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, et al., | Case No. 2:08 CV 575 |
| Plaintiffs, | Judge Frost |
| v. | Magistrate Judge King |
| MOUNT VERNON CITY SCHOOL DISTRICT BOARD OF EDUCATION, et al., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.    INTRODUCTION**

In his Motion for Partial Summary Judgment, Defendant John Freshwater confirms previous admissions by agreeing that he applied an electrostatic device known as a Tesla coil to Zach Dennis' arm.  (Def.'s Mot. for Partial Summ. J. (Doc. No. 61) at 6 (hereinafter "Def.'s MSJ").)  He argues, however, that Plaintiffs are barred from recovery for battery because Zach consented to the touching with the Tesla coil.  (*Id.* at 7.)  Although legal consent may bar recovery under the common law, *see* Restatement (Second) of Torts § 892A (1979), Freshwater mistakenly conflates legal consent to battery with Zach's volunteering to participate in a science experiment.[1]

---

[1] In addition to seeking summary judgment on his battery claim (Def.'s MSJ at 12), Defendant also questions Plaintiffs' standing but does not move for summary judgment on Plaintiffs' request for injunctive relief on their Establishment Clause claim (*id.* at 3-4).  Plaintiffs do not deny that the request for injunctive relief is now moot, but their requests for declaratory judgment, damages, attorneys fees, and other relief flowing from their Establishment Clause cause of action (*see* First Amend. Compl. (Doc. No. 11) ¶¶ 74-81, 96-104) should remain.

Zach's volunteering to have the Tesla coil applied to his arm does not equate to legal consent for several reasons. First, Zach did not consent to the Tesla coil's application because his supposed consent was uninformed. And even if Zach did consent to having the device applied to his arm, Freshwater exceeded the scope of that consent. *See* Restatement (Second) of Torts § 892A(2)(b). Much like a doctor who does not disclose the pertinent facts of a medical procedure to a patient, Freshwater failed to disclose the full nature and consequences of his Tesla coil "experiment" to his eighth grade student. In short, Zach could not consent to what he did not know. Second, Zach did not possess the capacity to consent to Freshwater's actions. *See id.* at § 892A(2)(a). As a impressionable thirteen-year-old minor, he could not appreciate the nature and extent of the circumstances surrounding Freshwater's experiment. Additionally, under Ohio law, only Zach's parents could have consented to allowing Freshwater to burn a mark on their son's arm. *See* 37 O.R.C. § 3730.06 (requiring parental consent for a tattooing procedure). Third, even if Zach did and could consent, this alleged consent was negated by mistake, misrepresentation, and duress. *See* Restatement (Second) of Torts § 892B.

As discussed below, and despite Freshwater's assertions to the contrary, Zach did not legally consent to this battery based on law and fact. Therefore, *Defendant is not entitled* to summary judgment on Plaintiffs' battery claim. Instead, as supported in their Motion for Partial Summary Judgment and below, *Plaintiffs are entitled* to summary judgment on their battery claim based on the law and undisputed facts of this case.[2] (*See* Pls.' MSJ at 26-29.)

---

[2] Because the parties have provided extensive analysis of the undisputed facts of this case in other pleadings (*see* Def.'s MSJ at 4-6; Pls.' Mot. for Partial Summ. J. (Doc. No. 60) at 4-10 (hereinafter "Pls.' MSJ")), this opposition memorandum will not reiterate those facts but will directly incorporate them into the argument below.

**II.     ARGUMENT**

Freshwater's Motion for Partial Summary Judgment should not be granted because Zach did not and could not consent to Freshwater's application of the Tesla coil, and even if Zach did consent, mistake, misrepresentation, and duress negate that alleged consent.

**A.     Zach Did Not Consent To Freshwater's Application Of The Tesla Coil.**

No legal consent existed to excuse Freshwater's use of the Tesla coil on Zach's arm because Freshwater failed to disclose the relevant facts of the procedure or its consequences, verbally or otherwise. Further, even if Zach did consent to having the Tesla coil applied to his arm, such as agreeing to the device's application because he expected it to result in a quick, painless electrical shock, Freshwater exceeded the scope of that consent by inflicting a painful, cross-shaped electrical burn on Zach's arm with the Tesla coil.

**1.     Zach's Consent Was Not Informed Because He Was Without "Full Disclosure" Of The Consequences And Conduct.**

Zach could not consent to Freshwater's actions because Freshwater did not disclose sufficient facts about the risks associated with applying the Tesla coil to human skin to earn that consent. Informed consent requires "full disclosure of the implications and probable consequences of the proposed conduct to which such consent applies [when] given in such terms as may be fully comprehended by the person giving the consent." *Lacey v. Laird*, 139 N.E.2d 25, 29 (Ohio 1956) (Hart, J., concurring). The Restatement (Second) of Torts also confirms the common-law requirement that for consent to be effective, it "must be . . . to the particular conduct, or to substantially the same conduct [consented to]." § 892A(2)(b).[3] Zach did not

---

[3] In support of his Motion, Defendant cites the Restatement to imply that consequences of conduct do not matter. (Def.'s MSJ at 10 (quoting Restatement (Second) of Torts § 892B cmt. c).) His citation mischaracterizes the Restatement and the significance of a tort's consequences for consent. Not only does the Ohio Supreme Court make clear that consequences do matter for consent to torts, *see Lacey*, 139 N.E.2d at 29 (requiring disclosure of "probable consequences"), but the Restatement specifically states that an understanding of the consequences is essential to forming the capacity necessary for consent, *see* Restatement (Second) of Torts § 892A cmt. b (stating

receive "full disclosure" from Freshwater and therefore could not consent to the "particular conduct" that occurred.

Although Ohio courts have not addressed the issue of informed consent to battery under a set of facts similar to those in the instant case, their treatment of informed consent in the medical context proves instructive. In addition to the rule outlined in *Lacey* above, the Ohio Supreme Court in *Nickell v. Gonzalez* explained that consent cannot be obtained for medical treatment where "a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy." 477 N.E.2d 1145, 1148 (Ohio 1985). Similarly, the Tenth District Court of Appeals in *Belcher v. Carter* noted that where "a patient's consent to a touching is given without sufficient knowledge and understanding of the nature of the touching contemplated by the doctor, there may be no legal defense to battery based upon consent." 234 N.E.2d 311, 312 (Ohio Ct. App. 1967).

Despite his effort to claim otherwise, Freshwater did not provide Zach with "full disclosure of the implications and probable consequences" of the Tesla coil experiment. *See Lacey*, 139 N.E.2d at 29. Indeed, Freshwater's Motion remains notably devoid of any express warnings that he provided to Zach, and portions of Freshwater's deposition reveal his clear failure to disclose the risks of his experiment to his students:

---

(continued…)

that a child must be capable of appreciating the consequences). Read in context, the Restatement provides that consequences do not matter only in instances where unexpected consequences result from a consented-to tort, which is not a circumstance present in this case. *See, e.g.*, *id.* cmt. e, illus. 5 ("In a friendly test of strength, A permits B to punch him in the chest as hard as he can. B does so. Unknown to either A or B, A has a defective heart and as a result of the blow he drops dead. A's consent is effective to bar recovery for his death."); Prosser and Keeton on the Law of Torts § 18 at 118 (West Publishing Co. 1984) (noting that consent remains effective where certain consequences "unexpectedly result[]").

> Q. Okay. Before using the Tesla coil on any of the kids when you did this experiment where they came up and volunteered, did you ever warn any of the kids about any of the dangers associated with the Tesla coil?
> A. No, sir.
> Q. And I assume you didn't ask any of the kids whether they had any health problems before they had come up to volunteer to have the Tesla coil be used on them?
> A. No, sir.
> Q. Did you ever ask any of the students whether they had a pacemaker or any --
> A. No, sir.
> Q. And you didn't ever ask the students whether they had any kind of heart condition.
> A. No, sir.
> Q. Did you ever ask any of the students if they were pregnant . . . ?
> A. No, sir.

(Def. Freshwater's Dep. at 192-93, Oct. 14, 2009 (hereinafter "Freshwater Dep.") (attached as Ex. A to Pls.' MSJ); *see also In the Matter of the Termination of Employment of John Freshwater* (hereinafter "Freshwater Termination Hearing Tr."), John Freshwater Test., 10/28/08, at 401-02 (stating the same and adding that he tells students "it may leave a red mark") (attached as Ex. E to Pls.' MSJ).)

The only thing Freshwater told his students about the Tesla coil was that its application would result in a "temporary tattoo" that would remain for a while. (Freshwater Termination Hearing Tr., Zachary Dennis Test., 10/28/08, at 338-39; *see also id.*, John Freshwater Test., 10/28/08 (stating that he tells students that "it may leave a red mark"); Zachary Dennis Decl. ¶ 4 (attached as Ex. B to Pls.' MSJ).) This statement does not amount to a full disclosure of the implications and probable consequences of applying the Tesla coil to human skin. To a thirteen-year-old child, temporary tattoos are painlessly applied as stickers at events such as Ohio State football games, birthday parties, or county fairs. Temporary tattoos may last "for a while" but often come off with soap. Certainly no burns, itching, or blistering result from application of

these benign tattoos. The "temporary tattoo" of a Tesla coil, on the other hand, constitutes a serious undertaking requiring the application of a device that creates an electrical charge between 22,000 and 45,000 volts. (Freshwater Dep. at 146, 153.) And, for this undertaking, Freshwater did not disclose the relevant consequences despite the fact that he knew the electrical shock from the coil "hurts," "may leave a red mark," and that upon contact with the coil, most students "pull away." (Freshwater Termination Hearing Tr., John Freshwater Test., 10/28/08, at 399-401.)

Despite supplying insufficient verbal warnings to defend his actions, Freshwater nevertheless claims that Zach consented to the Tesla coil's application by volunteering while aware of certain implied warnings given in the classroom that day. (Def.'s MSJ at 12.) These so-called warnings include Zach's witness of an electric charge emitting from the coil, the surprised shock of a fellow student (Student No. 7) in contact with the coil, and the application of the device to other students' arms. (*Id.*) These facts, while undisputed, again do not amount to a full disclosure of the implications and probable consequences of the Tesla coil experiment. *See Lacey*, 139 N.E.2d at 29.

Seeing "little lightning bolt[s]" did not provide Zach with the information necessary to consent to Freshwater's application of the Tesla coil. (*See* Def.'s MSJ at 11.) Whereas Zach may have expected, at most, a static electric shock or a tingling sensation when he volunteered for Freshwater's experiment, Freshwater knew and failed to disclose that application of the high-voltage device could result in prolonged pain or burns. (*See* Freshwater Dep. at 146, 153, 192-93; Freshwater Termination Hearing Tr., John Freshwater Test., 10/28/08, at 399-401.)

Freshwater's assertion that Zach's observation of Student No. 7's response to the shock of the device constituted the requisite disclosure of the implications or probable consequences of extended contact is meritless. (Def.'s MSJ at 11.) Freshwater briefly applied the coil to shock

6

Student No. 7, and the student responded that it "kind of hurt." (Def.'s MSJ at 5.) This incident provided no real warning for the experiment to come because the temporary pain from an instantaneous shock did not reveal the long-term burning that resulted from Zach's prolonged contact. In context, children at the age of thirteen may be aware of the minor "pain" that results from playful static electric shocks to one another, but they cannot from mere observation comprehend the dangers of prolonged exposure to a high-voltage electrostatic device.

      Contrary to Freshwater's contention, his application of the Tesla coil to the arms of other students did little, if anything, to inform Zach of the relevant dangers of the device. (*See* Def.'s MSJ at 11.) While it is true that Freshwater applied the Tesla coil to several students before he used it on Zach's arm (Freshwater Dep. at 176), the implications or probable consequences of these applications of the Tesla coil—that is, the blistering red welts and burning—were not immediately apparent to Zach or to other students in the classroom. In other words, when Zach watched Freshwater apply the Tesla coil to other student volunteers, Zach had no way of knowing that his own participation in Freshwater's classroom demonstration would cause him to suffer a painful, cross-shaped burn on his arm. (Zachary Dennis Decl. ¶ 11) It was not until later in the class period—after Freshwater had applied the Tesla coil to all of the student volunteers— that Zach began to see the effects of the electrical burn, including "red blotches" and "little welts" on his arm. (Freshwater Termination Hearing Tr., Zachary Dennis Test., 10/28/08, at 340; Zachary Dennis Decl. ¶ 6.) The resulting burn was painful that afternoon, but not unbearably so. (Zachary Dennis Decl. ¶ 7.) Hours later, however, the burn had become increasingly painful. (Freshwater Termination Hearing Tr., Zachary Dennis Test., 10/28/08, at 341-42; Zachary Dennis Decl. ¶ 8; Stephen Dennis Decl. ¶¶ 3-5 (attached as Ex. D to Pls.' MSJ).) Even later that night, Zach awoke crying from the pain, and his mother had to give him a pain killer to help him

7

sleep. (Freshwater Termination Hearing Tr., Zachary Dennis Test., 10/28/08, at 342-43; *id.*, Jenifer Dennis Test., 10/28/08, 365-67; Zachary Dennis Decl. ¶ 9; Jenifer Dennis Decl. ¶ 5 (attached as Ex. C to Pls.' MSJ); Stephen Dennis Decl. ¶ 9.)  The photos of this burn tell much of Zach's painful story.  (Jenifer Dennis Decl. ¶¶ 5-6 (photographs attached as Ex. 1 and 2 to Decl.); Stephen Dennis Decl. ¶¶ 6-7 (photograph attached as Ex. 1 to Decl.).)  Mere observation of other students participating in Freshwater's experiment cannot fairly be said to constitute disclosure of the "probable consequences" of having the Tesla coil applied to Zach's arm.  Therefore, Zach remained uniformed, and so did his consent.

Not only did Freshwater fail to acquire Zach's informed consent through express or implied means, but Zach has also testified that he would not have participated in the experiment had he know that the Tesla coil could injure him.  (Freshwater Termination Hearing Tr., Zachary Dennis Test., 10/28/08, at 343; Zachary Dennis Decl. ¶ 11.)  This adds further credence to the fact that consent was not given because Zach, as a reasonable person, would have elected against taking part in the experiment "had the material risks and dangers inherent and incidental to treatment been disclosed to him."  *Nickell*, 477 N.E.2d at 1148.

        **2.**        **Freshwater Exceeded The Scope Of Any Alleged Consent That Zach Purportedly Provided.**

Even if Zach did consent to some type of offensive touching, Freshwater exceeded the scope of that consent by burning Zach with the Tesla coil.  Under Ohio law, "[i]f the actor exceeds the consent, the consent is not effective for the excess and he is not protected from liability for harm attributable to the excess."  *McIntyre v. Thriftco, Inc.*, No. 77767, 2001 WL 534158, at *4 (Ohio Ct. App. May 17, 2001) (citing Restatement (Second) of Torts § 892A(4) and cmt. h).  Similarly, the Restatement's view of the common law requires consent to specific

conduct, and actors exceeding the consent given cannot avoid "liability for the excess." Restatement (Second) of Torts § 892A cmt. h.

While Zach arguably consented to a shock or minor type of touching from the Tesla coil, Freshwater exceeded the scope of that consent because his actions caused burning, blistering, and prolonged discomfort. As discussed above, Freshwater provided little or no verbal warning (Freshwater Dep. at 192-93), at most mentioning that a temporary tattoo would remain on students' skin for a while (Freshwater Termination Hearing Tr., Zachary Dennis Test., 10/28/08, at 338-39; *see also id.*, John Freshwater Test., 10/28/08, at 401-02 (stating that he tells students "it may leave a red mark"); Zachary Dennis Decl. ¶ 4). Therefore, while Zach may have consented to a temporary tattoo, he did not consent to a blistering burn. Similarly, the implied cues in the classroom at best provide Freshwater with a defense to a "shock," not a burn. Zach viewed a "little lightning bolt" projecting from the coil, saw Freshwater shock a fellow student, and witnessed Freshwater touching other students with the device. (Def.'s MSJ at 11.) Zach arguably consented to similar conduct, but the scope of that consent was limited to a shock and not a burn that Zach could not reasonably foresee. Because Zach's consent to Freshwater's application of the Tesla coil was uninformed, and because Freshwater exceeded the scope of any consent that Zach allegedly provided, Freshwater has no defense to the Dennises' claim against him for battery. Accordingly, the Dennises, not Freshwater, are entitled to summary judgment on their battery claim.

### B. Zach Did Not Possess The Requisite Capacity To Consent To The Use Of The Tesla Coil.

Even if this Court finds that Zach technically consented to Freshwater's burning with the Tesla coil (which it should not), as a minor, Zach cannot legally consent to this type of battery. First, under the common law, Zach was not "capable of appreciating the . . . conduct consented

to." Restatement (Second) Torts § 892A cmt. b. Second, as an impressionable minor, Ohio law prevents Zach from consenting to such actions.

### 1. Zach Was Not Capable Of Appreciating The Conduct To Which He Consented.

As a minor, Zach lacked the capacity to appreciate the "experiment" for which he was volunteering, and the Restatement makes clear that one cannot consent without the requisite capacity. *Id.* at § 892A(2)(a). Specifically relating to children, the Restatement provides that capacity exists only where a child "is capable of appreciating the nature, extent and probable consequences of the conduct consented to." *Id.* at § 892A cmt. b.

Ohio courts have not specifically adopted Section 892A of the Restatement, but this provision nonetheless provides guidance in this case. In its only treatment of section 892A, the Ohio Supreme Court considered facts in *Marchetti v. Kalish*, where a thirteen-year-old plaintiff participated in a game of "kick the can" but was injured by a fellow participant in the process. 559 N.E.2d 699, 699 (Ohio 1990), *reh'g denied*, 562 N.E.2d 163 (Ohio 1990). Noting the difficulties of imposing Section 892A(2)'s capacity requirements in sports contexts, the Ohio Supreme Court found it preferable to not require "courts to delve into the minds of children to determine whether they understand the rules of the recreational or sports activity they are engaging in." *Id.* at 703 (following the reasoning adopted in several other states). For judicial efficiency considerations specific to frequent sports-related claims, the Court "perceive[d] no reason to distinguish between children and adults." *Id.* This statement alone implies that, outside of the sports context, courts may appropriately distinguish between children and adults to determine, under the circumstances, whether a child possesses the requisite capacity to consent.

To avoid § 892A's capacity requirement for children, Freshwater submits in his Motion that Zach "cannot be said of [sic] have the mental capacity of a child." (Def.'s MSJ at 10.)

10

Freshwater not only makes this conclusory statement without factual or legal backing, but he does so while ignoring the facts that indicate Zach's childlike mental capacity under the circumstances that gave rise to the battery at issue here.

The context of Freshwater's position of authority over Zach provides the primary indicator that Zach did not legally consent. Freshwater was Zach's teacher, an authority figure whom Zach trusted and admired. (Zachary Dennis Decl. ¶ 14.) But instead of using that position of trust to emphasize the tenets of science, Freshwater abused his position and harmed Zach, an unwitting student volunteer, in the process. Zach had witnessed many of Freshwater's experiments throughout the school year without incident (*see* Zachary Dennis Decl. ¶ 1), so he had no reason to doubt his teacher's intentions regarding the Tesla coil. Freshwater took Zach's trust, applied a device that emits up to 45,000 volts to his pliable student's arm, and produced a blistering burn in the process. (*See supra* Section II.A.1.)

Freshwater's statement that his application of the Tesla coil would result in a temporary tattoo hardly qualifies as a warning to students of the dangers associated with the device. (Freshwater Termination Hearing Tr., Zachary Dennis Test., 10/28/08, at 338-39; *see also id.*, John Freshwater Test., 10/28/08, at 401-02 (stating that he tells students "it may leave a red mark"); Zachary Dennis Decl. ¶ 4.) As discussed above, a temporary tattoo can mean many things to a thirteen-year-old child, but a blistering burn is not one of them. (*See supra* Section II.A.1.) Relying on that wholly insufficient warning and the presumed goodwill of his trusted teacher, Zach did not possess the capacity to appreciate the nature, extent, and probable consequences of applying a Tesla coil to human skin. It would be one thing for Zach to consent to a game of "kick the can," *see Marchetti*, 559 N.E.2d at 699; it would be quite another to permit him to consent to being burned by his eighth grade science teacher.

Another section of the Restatement further highlights the gravity of Freshwater's actions. Section 314A imposes a special duty on those "tak[ing] custody of another." Restatement (Second) of Torts § 314A(4); *see also Hill v. Sonitrol of Southwestern Ohio, Inc.*, 521 N.E.2d 780, 784 (1988) (noting that Ohio has adopted § 314). In a student-teacher relationship, Zach was uniquely entrusted into Freshwater's care to protect Zach from his "own conduct" or "from the acts of third persons." § 314A cmt. d; *see also Bevan Group 9 v. A-Best Products Co.*, No. 502694, 2004 WL 1191713, at *3 n.4 (Ohio Com. Pl. May 17, 2004) (noting that "special relationships that impose a duty of reasonable care [include] . . . schools and students . . . ."). This special duty emphasizes Zach's unique and vulnerable position in Freshwater's classroom and Zach's inability to consent. But rather than protecting Zach from the tortious acts of others, Freshwater himself committed a tort against Zach, thus falling far short of fulfilling the special duty of care he owed to his students.

Further, as a thirteen-year-old child, Zach could not appreciate from mere contextual cues the nature, extent, and consequences of the Tesla coil experiment. Certainly, he saw a device with a "little lightning bolt," saw Freshwater shock another student with that device, and even saw Freshwater apply the device to other students' arms. (*see* Def.'s MSJ at 11.) If anything, these cues would indicate to a student in an eighth grade science class that the Tesla coil—in his teacher's trusted hands—was harmless. Viewed through the eyes of a thirteen-year-old child, Zach participated in what a reasonable student of his age would perceive as a fun science experiment. That "experiment" turned out to be anything but fun. Zach could not comprehend the undisclosed dangers affiliated with the Tesla coil and he certainly could not understand the painful consequences of prolonged exposure to this device. Under these circumstances, therefore,

Zach lacked the capacity to consent because the "extent and probable consequences of the conduct consented to" were beyond the comprehension of a child of his age and position.

### 2. As A Minor, Zach Could Not Consent To Freshwater's Application Of The Tesla Coil Under Ohio Law.

In addition to not appreciating the nature of the Tesla coil experiment, Ohio law prevents Zach from consenting to such experiments. While status as a minor does not negate the capacity to consent to intentional torts outright, it remains an important consideration for capacity to consent generally. *See Marchetti*, 559 N.E.2d at 703 (noting that in the sports context only, "we perceive no reason to distinguish between children and adults"). As such, Ohio law is replete with examples of provisions protecting unwitting minors from themselves and from others, and these laws should be read to prevent Zach's consent here.

Bearing directly on the circumstances of this case is a provision of the Ohio Revised Code that forbids minors from consenting to tattooing or other procedures that mark the body. 37 O.R.C. § 3730.06. Section 3730.06(A) provides that "[n]o person shall perform a tattooing procedure, body piercing procedure, or ear piercing procedure . . . on an individual who is under eighteen years of age unless consent has been given by the individual's parent, guardian, or custodian." Despite this law, Freshwater branded Zach's body without Zach's parents' consent. Freshwater may not have performed a "tattooing procedure" under the implied definition of the statute, but he effectively marked Zach's body in a way that produced results similar to a tattooing procedure. *See* 37 O.R.C. § 3730.01 (providing a definition for body piercing but not for a tattooing procedure). Tattooing creates immediate pain to produce permanent marks on the skin; the Tesla coil produces immediate and prolonged pain to produce long-term marks on the skin. Further indicating that the statute makes Zach's consent to this "tattoo" impossible, Freshwater specifically remarked in the classroom that he would apply the Tesla device to make

13

a "temporary tattoo" in the shape of a cross.  (Freshwater Termination Hearing Tr., Zachary Dennis Test., 10/28/08, at 338-39; Zachary Dennis Decl. ¶ 4.)  Ohio's statute regarding minors receiving tattoos effectively strips Zach of his ability to consent, and therefore, Freshwater retains no defense to his tattooing experiment.

Indirect applications of Ohio law also protect minors from situations in which they lack the capacity to understand the circumstances of an event or in which they remain vulnerable to the improper solicitation of adults.  While less explicit than the tattooing statute, these laws also should be read to prevent Zach's consent to be burned by the Tesla coil.  For instance, under Ohio law, "children who are between the ages of seven and fourteen years are presumptively incapable of negligence."  *Sorriento v. Ohio Dept. of Transp.*, 577 N.E.2d 167, 171 (Ohio Ct. Cl. 1988).  At this immature age, the "rebuttable presumption arises that the minor involved is 'incapable' of forming the necessary judgments for self care[.]"  *Howland v. Sears, Roebuck & Co.*, 438 F.2d 725, 730 (6th Cir. 1971) (citing *Lake Erie & W. Railroad Co. v. Mackey*, 41 N.E. 980, 981 (Ohio 1895)).  These children are "not chargeable with the same standard of care and caution as would be expected of a person of mature years" and instead are held to a standard of care of those similar in  "age, education, experience" under the circumstances.  *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Grambo*, 134 N.E. 648, 650 (Ohio 1921) (affirming instructions of a trial court).  While Freshwater claims that Zach "cannot be said of [sic] have the mental capacity of a child" (Def.'s MSJ at 10), Ohio law explicitly states that Zach should be considered a child for the purposes of negligent torts unless proven otherwise.  This legal requirement, viewed in light of the circumstances of the Tesla coil experiment, indicate that Zach could not possess the capacity to consent.

14

The areas of medical treatment, abortion, and sexual assault provide additional examples of situations in which minors cannot consent under Ohio law. While these situations differ from the conduct at issue in this case, they nevertheless provide good examples of Ohio law explicitly precluding minors from consenting to activities affecting their bodies. In the medical context, for instance, minors at the age of thirteen cannot consent to most medical procedures. *See Lacey*, 139 N.E.2d at 30; 51 O.R.C. § 5122.04 (permitting minors fourteen years or older to seek "outpatient mental health services, excluding the use of medication, without the consent or knowledge of the minor's parent or guardian"). Similarly, a minor under the age of eighteen cannot seek an abortion without parental consent or the special leave of a court. *See* 21 O.R.C. § 2151.85 (permitting minors under the age of eighteen to have abortions only in certain cases of abuse).

Specifically noting the powerful influence of teachers over their students, the Ohio Revised Code makes a teacher's sexual conduct with a student a felony in the third degree. 29 O.R.C. § 2907.03(7). Several other laws appropriately protect minors from various sexual acts, emphasizing that minors have limited power to consent to actions harmful to their own bodies. *Id.* § 2907.02(b) (defining sex with anyone under the age of thirteen as rape); *id.* § 2907.03 (generally prohibiting sexual conduct with a person under eighteen where the defendant occupies a position of authority); *id.* § 2907.04 (prohibiting sexual conduct with a minor where the defendant knows the victim is under sixteen but over twelve or is reckless in regard to the victim's age); *id.* § 2907.05 (defining gross sexual imposition as sexual contact with anyone under thirteen); *id.* § 2907.06 (prohibiting sexual contact with persons under sixteen but over twelve where the defendant is four or more years older than the victim). In sum, these various laws emphasize Ohio's intent to prevent minors from submitting their bodies to offensive

touchings. In light of this intent, Ohio law should be read to prevent Zach from consenting to Freshwater's application of the Tesla coil to his arm. Because Zach could not legally consent under the circumstances of this case, Freshwater should not be granted summary judgment on the battery claim.

> C.  **If Zach Did Consent To Freshwater's Use of the Tesla Coil, He Did So Under Mistake, Misrepresentation, Or Duress.**

The law and facts outlined above make clear that Zach did not and could not consent to Freshwater's experiment, but even if Zach did consent to Freshwater's application of the Tesla coil, mistake, misrepresentation, and duress prevent that alleged consent. The common law negates consent when made with "substantial mistake concerning the nature of the invasion of [] interests or the extent of harm to be expected from [the conduct]." Restatement (Second) of Torts § 892B(2). Similarly, the Restatement notes that duress makes consent ineffective. *Id.* § 892B(3).

Regarding mistake or misrepresentation, the Restatement explains that "[b]y deliberately taking advantage of the other's ignorance, [the defendant] takes his chances that the consequences that he knows that the other does not expect will occur, and he becomes liable as if no consent had been given." *Id.* § 892B cmt. d. Elaborating on this common-law concept, Prosser and Keeton explain that where a defendant gives a plaintiff poisoned candy when only the defendant knows of the poison, the unaware plaintiff's consent becomes invalid. Prosser and Keeton on the Law of Torts § 18 at 119-20 (West Publishing Co. 1984). Like a defendant who gives his uninformed victim poisoned candy, Freshwater applied his Tesla coil to Zach, who was unaware that the device could cause burns. Freshwater, on the other hand, knew the consequences of applying the Tesla coil to human skin—the burning and the pain—but after twenty years of doing this classroom experiment, he chose only to disclose that it would make a

16

temporary tattoo that would last for a while.  (*See supra* Section II.A.1.)  Freshwater therefore misrepresented what would happen when he applied the Tesla coil to students' arms, and Zach consented based exclusively on Freshwater's misrepresentation of what could transpire.  This unilateral mistake negates Freshwater's consent defense.

What is more, Zach has testified that Freshwater held his arm down while the Tesla coil was applied.  (Zachary Dennis Decl. ¶ 5; *see also* Freshwater MSJ at 6 ("Mr. Freshwater used his left wrist and laid it on top of James' right wrist and Mr. Freshwater took his right hand to guide the Tesla coil on James' arm making two horizontal lines and two vertical lines.").)  At the very least, this actual physical duress negates any purported consent.  *See* Restatement (Second) of Torts § 892B(3) ("Consent is not effective if it is given under duress.").  Therefore, in light of the facts indicating mistake, misrepresentation, and duress, Zach did not give his consent.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Freshwater's Motion for Partial Summary Judgment on their battery claim and grant Plaintiffs' Motion for Partial Summary Judgment on this claim.

                Respectfully submitted,


                /s/Douglas M. Mansfield
                Douglas M. Mansfield (0063443)
                (Trial Attorney)
                dmansfield@jonesday.com
                JONES DAY
                325 John H. McConnell Blvd. Ste. 600
                Columbus, OH  43215

                (614) 469-3939 (telephone)
                 (614) 461-4198 (fax)

                Mailing Address:
                JONES DAY
                P.O. Box 165017
                Columbus, OH  43215-2673

                Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

       I hereby certify that on December 31, 2009, I electronically filed the foregoing Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following at their e-mail address on file with the Court:

Robert H. Stoffers
Jason R. Deschler
MAZANEC, RASKIN, RYDER & KELLER, CO., LPA
250 Civic Center Drive, Suite 400
Columbus, OH 43215

*Counsel for Defendant John Freshwater*

R. Kelly Hamilton
4030 Broadway
P. O. Box 824
Grove City, OH 43123

*Counsel for Counterclaimant John Freshwater*

                                                      /s/Douglas M. Mansfield_____
                                                      Douglas M. Mansfield