Page 360

1  HEARING OFFICER: Certainly. We'll stand adjourned
2  for ten minutes to prepare for the next witness. Be back at
3  25 after, please.
4          (A recess was taken from 10:13 a.m.
5           to 10:28 a.m.)
6  HEARING OFFICER: All right, ladies and gentlemen,
7  we're ready to reconvene the hearing. Just a reminder to
8  everybody in the chamber if they could turn their cell phones
9  and all recording devices off while we're engaged in the
10 hearing, I'll appreciate that.
11 MR. MILLSTONE: Before we call the next witness --
12 we're ready to proceed with the next witness. If I heard
13 Mr. Hamilton correctly, he waived cross-examination of Zach
14 Dennis. I believe he used those words, that I waive
15 cross-examination.
16 HEARING OFFICER: Actually, he used the word
17 "forego," but I interpret that to mean the same as a waiver.
18 MR. MILLSTONE: Having chosen not to cross-examine
19 Zach, he has the right to call him in his case in chief but
20 cannot inquire under the Rules of Evidence and under the
21 Civil Rules into any subjects that were already covered
22 during the course of his direct examination, and I just --
23 which is the position we plan to take at that point in time.
24 And in fairness to Mr. Hamilton, before he may choose to do
25 that again, I wanted to make that clear on the record.

Page 361

1  HEARING OFFICER: You have done so.
2          Do you have any comments, sir?
3  MR. HAMILTON: Yes, sir. We heard new information
4  today. There's been new information that's actually come out
5  as recently as that that was in the paper today, information
6  that we hadn't been able to previously prepare for,
7  information that we had no idea even existed, specifically as
8  it relates to this particular witness. Therefore, we do
9  anticipate -- and if it's going to be the Court's ruling that
10 somehow cross-examination was waived, then, by all means,
11 we'll go ahead on the record right now and make it very
12 clearly stated that we will intend to call him back during
13 the case in chief as if on cross-examination, in case I did
14 not properly explain that earlier.
15         But we are foregoing at this particular time the
16 opportunity to cross-examine based upon some of the new
17 information that was presented. It's something that's
18 clearly done in cases in courtrooms all across the state of
19 Ohio, and that's what I intend to employ. Now, just so it's
20 understood, I do intend to go into those topics. If it's
21 going to be the Court's direction that those topics cannot be
22 gone into, then let's bring the young man back before we go
23 onto the next witness and we'll begin the cross-examination.
24         I think the Court's probably pretty aware that I'm
25 pretty meticulous and pretty thorough about every particular

Page 362

1  issue. What we're trying to do is give the School Board an
2  opportunity to go ahead and present your case, because the
3  nature of the allegations here are just based upon a
4  particular report, and, essentially, there's nothing else
5  that we have to rely upon. We need to find out what some of
6  the sworn statements may be from these particular people,
7  because this document contains no sworn statements, just
8  assertions that are complete hearsay.
9          Therefore, I would request that if the Court is
10 somehow in the future going to somehow rule that we've given
11 up our opportunity to cross-examine, then I would ask that we
12 bring him back right now. Unfortunately, I think it will
13 take longer than is necessary if I just simply have the time
14 to prepare for some of the information that we heard about
15 today.
16 HEARING OFFICER: Thank you. I'll take both of
17 your arguments under advisement at this point. Let's proceed
18 with our next witness.
19 MR. MILLSTONE: We call Jenny Dennis.
20 HEARING OFFICER: Be seated. State your name for
21 the record, please.
22 THE WITNESS: Jennifer Dennis.
23 HEARING OFFICER: Thank you. Attorney Millstone.
24 MR. MILLSTONE: Thank you.
25

Page 363

**JENNIFER DENNIS**
called as a witness by the Board, being first duly sworn or
affirmed, was examined and testified as follows:
**DIRECT EXAMINATION**
BY MR. MILLSTONE:
Q. Mrs. Dennis, where do you live?
A. 1420 Club Drive, Mount Vernon, Ohio.
Q. And do you have any relationship to Zach Dennis?
A. I'm his mother.
Q. I want to ask you about events in December of last
year. Do you recall Zach coming home from school one day
with something on his arm?
A. Yes.
Q. Could you describe what happened that afternoon when
Zach came home.
A. After school, I believe he went to a friend's house.
And I believe it was around December 6th. I was home. He
was going to Cleveland that night to work with his goalie
coach, so I was trying to get his hockey gear together,
making sure he had everything. When I saw him, he came in,
and I believe a neighbor was there. And he said, Look, Mom,
and showed me his arm.
     I was like, What is that?
     Shocked. I didn't know what it was. At that time, I
tried not to make a big deal of it because the neighbor was

```
 1  Q.   And what kind of questions did you ask her?
 2  A.   I don't recall.
 3  Q.   What kind of things did you tell her?
 4  A.   I don't recall.  That was a long time ago.  I think I
 5  gave her just a brief history of what had happened.
 6  Q.   She give you any direction?
 7  A.   No.
 8  Q.   She didn't have any suggestions for you?
 9  A.   No.
10  Q.   How did you describe to her the application of the Tesla
11  coil there on December 6, 2007?
12  A.   I'm not sure if I did.
13  Q.   You're not sure if you did or you didn't?
14  A.   I'm not sure if I did.
15  Q.   Okay.  If she has an understanding that the students
16  came up and you -- would you have perhaps articulated to her
17  during your conversation that the students came up and there
18  was no holding down of any arms?
19  A.   If I said how it happened, that's possible, because I
20  did not know at that time.
21  Q.   You did not know at what time?
22  A.   That the arm was placed on top of my son's arm.
23  Q.   When did you learn that your son's arm was allegedly
24  held down during the Tesla coil experiment?
25  A.   I believe it was in the fall.
```

```
 1  Q.  The fall of what?
 2  A.  This year.
 3  Q.  2009?  We're not in the fall yet.
 4  A.  It was the beginning of this school year.
 5  Q.  The beginning of this school year.
 6  A.  Yes.
 7  Q.  That would have been fall of 2008?
 8  A.  Yes.
 9  Q.  You're saying that's the first time you learned about
10  your son's arm supposedly being held down?
11  A.  Yes.
12  Q.  And you would agree that that's approximately eight to
13  ten months after the incident happened?
14  A.  Yes.
15  Q.  Tell Ms. McDaniel that students stood in the front of
16  the room and extended their arms and Mr. Freshwater touched
17  them with the Tesla coil?
18  A.  I don't recall what I told her.
19  Q.  So if you don't recall what you told her, then is there
20  anything that would help refresh your recollection?
21  A.  I don't know.  As I said, I believe I just told her a
22  brief history of what had happened.
23  Q.  Did you make any notes about your conversation there
24  with Renee McDaniel?
25  A.  I don't remember if I did.  I may have written down that
```