IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN DOE AND JANE DOE,          Case No. 02:08 CV 575
AS THE NATURAL PARENTS
AND NEXT FRIENDS OF THEIR
MINOR CHILD, JAMES DOE

     Plaintiffs,                  JUDGE GREGORY L. FROST

     v.                                 Magistrate Judge NORAH MCCANN KING

MOUNT VERNON CITY SCHOOL
DISTRICT BOARD OF EDUCATION,
et al.,
     Defendants.

## COUNSEL'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE MOTION SEEKING COURT'S RECONSIDERATION OF OPINION AND ORDER ISSUED JUNE 1, 2010 (DOC. 107)

Now comes former counsel for Defendant/Counterclaimant John Freshwater to reply to Plaintiff's Memorandum in Opposition to Document 107.

The undersigned reiterates the request for an in-person, oral hearing before this Honorable Court to fully answer any questions and to provide any further documentation in response to the allegations made by the Plaintiffs and to accurately demonstrate assumptions made in the Court's Opinion and resultant Order are contrary to existent evidence.

On Tuesday, July 6, 2010, the undersigned learned from communications with Attorney Sandra McIntosh that a resolution in this matter occurred on Friday, July 2, 2010, which will include resolving any concerns against John Freshwater alleged in Plaintiff's Memorandum of Opposition (Doc. 114).

## **REPLY**

**TRUTH**

This case and the motion for reconsideration are about truth. It has been said truth sometimes is a poor competitor as truth can be complicated and always vulnerable to misinterpretation. Plaintiff's counsel again attempts to take snippets of information, repackage the information and argue for a conclusion that ignores or disavows the surrounding context and purpose of the information ultimately ignoring the truth of the matter.

It is important to note John Freshwater has been the focus of thirty-eight (38) days of trial in a state administrative hearing that encompasses three hundred fifty (350) exhibits, over eighty-six (86) witnesses and comprises in excess of six thousand (6,000) pages of transcript. Any analysis of a word, phrase, sentence, assertion or argument must be done in context of the totality of the evidence surrounding the allegations in the state hearing as that information coincides with issues in this matter. It is important to grasp the fact that a witness or document relevant in the state hearing may not be relevant in this matter. The mocking nature of Plaintiff's counsel in asserting the allegations against the undersigned and John Freshwater is reflective of Plaintiff's counsel's misunderstanding of the evidence. There are few worse, compounding, harmful, time-wasting untruthful assertions than a truth misunderstood by those who hear it.

**A. Response To "Mr. Hamilton Has Not Enumerated Any Legitimate Reason For Granting The Motion For Reconsideration".**

Correcting a clear error and to prevent manifest injustice are important factors in a motion for reconsideration. Clear errors were presented to the Court as the result of John Freshwater's counsel, in other relevant matters, was unavailable to assist John Freshwater

by providing explanation as to any allegations. Based upon those clear errors, John Freshwater and the undersigned would have suffered an injustice.

Counsel for Plaintiffs asserts John Freshwater and the undersigned continue to violate discovery rules. John Freshwater and the undersigned have complied with the Court's discovery order. Plaintiffs have repeatedly requested evidence related to John Freshwater's completion of the affidavits John Freshwater signed in May 2008. The existence of any evidence has been provided in that the evidence was destroyed absent any negligence of any party. Plaintiff's counsel fails to understand or recognize the circumstances surrounding any billing records still possessed by the undersigned because Plaintiff's counsel has failed to seek truthful answers by asking clarifying questions despite ample opportunity to have done so. Questions not asked or clarity not sought do not permit a party to prevail.

Any billing records obtained by Plaintiff's counsel indicating any billing activity to John Freshwater during May 2008 are based upon a separate fee agreement reflecting work completed for John Freshwater but not related to the preparation of the fifteen (15) affidavits. (Exhibit 1 - Affidavit of John Freshwater at 3 and 4) Again, truth sometimes is a poor competitor as truth can be complicated and always vulnerable to misinterpretation – but truth is truth. The truth is John Freshwater and his family have had four (4) different fee agreements for legal counsel. (Exhibit 1 - Affidavit of John Freshwater at 3) The billing record possessed by Plaintiff's counsel is reflective of a fee agreement signed by John Freshwater on June 26, 2008 – the third fee agreement - that permitted the undersigned to re-bill or receive payment for legal work done since the

inception of John Freshwater's legal need which began on April 17, 2008. (Exhibit 1 - Affidavit of John Freshwater at 3)

On May 15, 2008, the date John Freshwater was interviewed by HR on Call, Inc., John Freshwater made personal perceptions subsequent to personal interaction he had with a previous attorney who originally served as co-counsel. On May 19, 2008, a second fee agreement was drafted after the May 15, 2008, interview by HR on Call, as the undersigned and John Freshwater decided to work separately and apart from the previous co-counsel. The second fee agreement entered into by John Freshwater and the undersigned was for $175.00 per hour to "..investigate the allegations levied against.." John Freshwater. (Exhibit 1 - Affidavit of John Freshwater at 3) The second fee agreement was satisfied by payment from John Freshwater in November 2008 after the undersigned required payment for the outstanding balance related to the "investigative" effort. (Exhibit 1 - Affidavit of John Freshwater at 3) John Freshwater testified in the state hearing on December 8, 2009 about the difference between the "investigative" component versus the "legal" component of the undersigned's legal representation as follows: (Exhibit 1 - Affidavit of John Freshwater at 4)

Q. *When we first hired on together, did I tell that you there was a legal component and a legal investigative component?*

A. *Yes.*

Q. *And we actually had an arrangement that I would say treated you quite nicely financially that we separated out the legal expertise versus the investigative legal expertise. Right?*

A. *Yes.*

Q. *And we took care of those on different billing statements. Right?*

A. *Yes.*

Page **4** of **12**

Again, truth may be vulnerable to misinterpretation and misinterpretation can be had if clarifying questions are not asked. Plaintiffs' misinterpretation floats on the surface while the foundation of truth comfortably exists underneath the failure to ask investigative questions. It is well documented from comfortably reliable evidence that John Freshwater and the undersigned have fully and properly responded to Plaintiffs inquiry related to the preparation, drafting or documentation of John Freshwater's fifteen affidavits prepared in May 2008. John Freshwater contends the difference between the fee agreement of May 19, 2008 and the fee agreement of June 26, 2008 are as big as the difference between $175.00 per hour versus $275.00 per hour. The difference between the two are as different as night and day, as different at right versus wrong and as different as the truth versus these allegations. (Exhibit 1 - Affidavit of John Freshwater at 4) Speculation, alleging a conspiracy and the failure by counsel for Plaintiffs to ask clarifying questions does not permit a party to prevail when there has been a clear error and the result would be manifest injustice.

- **B. Response To "Mr. Freshwater And His Former Counsel Continue To Violate The Discovery Rules And This Court's Orders By Refusing To Produce Responsive Documents.**

- **1. Response To "Mr. Hamilton's Assertions About His Billing Records Do Not Add Up.**

The above explanation concerning the four (4) separate fee agreements and the difference between the "investigative" component versus the "legal" component of the different fee agreements signed by John Freshwater are truthful and "add up" when understood with all of the accompanying information and facts. John Freshwater and the undersigned assert the legal invoices and billings for the preparation of the fifteen (15)

affidavits are and were completely different from the legal invoices and billings for the legal work related to John Freshwater's state hearing and subsequent legal cases. (Exhibit 1 - Affidavit of John Freshwater at 4) There does not exist any notation for "investigative" work on the legal invoices and billings from the May 2008 Letter Bill possessed and disclosed by the undersigned because the "legal" work denoted thereon was wholly and separately billed from the "investigative" work completed in relation to the investigation of John Freshwater during May 2008 as the undersigned was at the time, working with another attorney and had to keep the billing information separate. (Exhibit 1 - Affidavit of John Freshwater at 3 and 4)

2. **Response To "Mr. Freshwater Has Not Been Forthcoming When It Comes To The Five Armloads Of Materials He Should Have Produced To The Dennis'".**

On Tuesday, July 6, 2010, the undersigned learned from communications with Attorney Sandra McIntosh that a resolution in this matter occurred on Friday, July 2, 2010, which will include resolving any concerns against John Freshwater alleged in Plaintiff's Memorandum of Opposition (Doc. 114). Nonetheless, it is important to provide context and meaning to the allegations made by counsel for Plaintiff's as doing so is reflective of Plaintiffs' twisted interpretation attributed to words spoken by John Freshwater at any point during his sixty (60) plus hours of sworn testimony.

Much ado has been made about John Freshwater's credibility and his spoken words. (Exhibit 1 - Affidavit of John Freshwater at 4) An example of such is John Freshwater's use of the word "pitched" to describe his actions concerning the five armloads of materials he received from the school superintendent. (Exhibit 1 - Affidavit of John Freshwater at 5) Plaintiffs contend John Freshwater destroyed or wasted

materials he received from the superintendent or from his classroom. (Exhibit 1 - Affidavit of John Freshwater at 5) First, consider that John Freshwater did not remove nor select any of the items given to him by the superintendent. (Exhibit 1 - Affidavit of John Freshwater at 5 and 6) John Freshwater simply arrived at the superintendent's office in response to a call from the superintendent that John Freshwater could retrieve some "personal" items. (Exhibit 1 - Affidavit of John Freshwater at 6)

Clarifying questions tend to narrow the focus of speculation and remove from doubt that which is in question. More than one person surmised the meaning of John Freshwater's use of the word "pitched" and attributed a negative connotation to his use of the word. John Freshwater testified on June 7, 2010, in the state hearing that the word, "pitched", is a term of art he has used in forestry fire-fighting. (Exhibit 1 - Affidavit of John Freshwater at 5) John Freshwater never "pitched" into the trash for disposal into a trash dump any of the items he received from the superintendent but for the Chinese letters. (Exhibit 1 - Affidavit of John Freshwater at 5) John Freshwater "pitched" the items he received from the superintendent, meaning he moved the items from his truck to a large garbage can he used for storage of various items, rather than dispose of the items in the trash, or leave the items in his truck. (Exhibit 1 - Affidavit of John Freshwater at 5) The undersigned clarified for seven pages of transcript what John Freshwater meant by the word "pitched" as the word can be a term of art for the act of moving something to a more suitable place rather than the singularly focused definition of presuming "pitched" meant to throw the trash into a dump. (Exhibit 1 - Affidavit of John Freshwater at 5)

Despite repeated requests to obtain a list of the items inventoried from John Freshwater's classroom, the superintendent and the school denied having any such

inventory. In fact, from January 12, 2009 until January 15, 2010, John Freshwater received a response from the school and superintendent that any items from his classroom were unavailable despite an outstanding subpoena request by John Freshwater. Subsequent to an anonymous letter being delivered to John Freshwater on January 14, 2010, John Freshwater learned the superintendent actually had what appeared to be a truckload of items taken from John Freshwater's classroom. Legal wrangling by the school district which asserted the school's treasurer did not have the authority to subpoenas tangible items was eventually responded to by John Freshwater with public records requests on March 8, 2010 and March 11, 2010. (Exhibit 1 - Affidavit of John Freshwater at 5 and 7) John Freshwater's public records requests demanded pursuant to Ohio Revised Code that he be given a copy of any inventory made by any person within the school district detailing the contents inventoried from his classroom. No such inventory list was provided and specifically denied as to its existence until June 22, 2010, when Superintendent Steve Short produced a handwritten inventory of the contents he allegedly completed when he inventoried John Freshwater's classroom contents. (Exhibit 1 - Affidavit of John Freshwater at 5, 6 and 7) The alleged inventory completed by Steve Short was not dated, contained items not familiar or known to John Freshwater as having been within his classroom and contained descriptions of school property such as a "beaker". (Exhibit 1 - Affidavit of John Freshwater at 5) Additionally, the writer of the inventory had difficulty spelling the word "pencil" in part for which John Freshwater asserts the written inventory was not prepared by Steve Short. (Exhibit 1 - Affidavit of John Freshwater at 5 and 6) Plaintiffs assert a Bible John Freshwater had present with him during the hearing on June 22, 2010, "appeared" to be a Bible described on the

superintendent's alleged inventory.  Remarkably, John Freshwater, despite having been cross examined on June 4 and 7, 2010, was never asked a single question about what "appeared" to be that Bible which had appeared with him during the state hearing because his other Bible was missing from the hearing room.  (Exhibit 1 - Affidavit of John Freshwater at 7)  John Freshwater asserts he absolutely never had "what appears to be this very Bible" at the school or anyplace other than his house or church.  (See Doc. 114, page 7, last two lines; and (Exhibit 1 - Affidavit of John Freshwater at 7)

3. **Response To "Mr. Freshwater Has Failed To Produce Relevant Audio Recordings."**

On Tuesday, July 6, 2010, the undersigned learned from communications with Attorney Sandra McIntosh that a resolution in this matter occurred on Friday, July 2, 2010, which will include resolving any concerns against John Freshwater alleged in Plaintiff's Memorandum of Opposition (Doc. 114).

Witnesses in one case are not necessarily relevant to the claims made in another case.  Plaintiffs claim is without merit as at the time when the recording was made Steve Hughes was not an agent or employee of the Plaintiffs as described in Request for Production Number 1, nor was Steve Hughes ever declared as a witness at anytime by either Plaintiffs or John Freshwater in this matter, as described in Request for Production Number 2.  (Exhibit 2 – Original Request for Production Propounded Upon John Freshwater)  Further, Steve Hughes was never declared as a witness in this Court's Final PreTrial Order (Doc. 85) as previous counsel for John Freshwater made a decision not to include Steve Hughes as a witness.

superintendent's alleged inventory.  Remarkably, John Freshwater, despite having been cross examined on June 4 and 7, 2010, was never asked a single question about what "appeared" to be that Bible which had appeared with him during the state hearing because his other Bible was missing from the hearing room.  (Exhibit 1 - Affidavit of John Freshwater at 7)  John Freshwater asserts he absolutely never had "what appears to be this very Bible" at the school or anyplace other than his house or church.  (See Doc. 114, page 7, last two lines; and (Exhibit 1 - Affidavit of John Freshwater at 7)

3. **Response To "Mr. Freshwater Has Failed To Produce Relevant Audio Recordings."**

On Tuesday, July 6, 2010, the undersigned learned from communications with Attorney Sandra McIntosh that a resolution in this matter occurred on Friday, July 2, 2010, which will include resolving any concerns against John Freshwater alleged in Plaintiff's Memorandum of Opposition (Doc. 114).

Witnesses in one case are not necessarily relevant to the claims made in another case.  Plaintiffs claim is without merit as at the time when the recording was made Steve Hughes was not an agent or employee of the Plaintiffs as described in Request for Production Number 1, nor was Steve Hughes ever declared as a witness at anytime by either Plaintiffs or John Freshwater in this matter, as described in Request for Production Number 2.  (Exhibit 2 – Original Request for Production Propounded Upon John Freshwater)  Further, Steve Hughes was never declared as a witness in this Court's Final PreTrial Order (Doc. 85) as previous counsel for John Freshwater made a decision not to include Steve Hughes as a witness.

John Freshwater and the undersigned have been responsive to Plaintiffs discovery request in total and with complete candor.  It is important to grasp the fact that a witness or document relevant in the state hearing may not be relevant in this matter.

**4. Response To "Mr. Freshwater Has Not Produced Responsive Emails."**

On Tuesday, July 6, 2010, the undersigned learned from communications with Attorney Sandra McIntosh that a resolution in this matter occurred on Friday, July 2, 2010, which will include resolving any concerns against John Freshwater alleged in Plaintiff's Memorandum of Opposition (Doc. 114).

Documents in one case are not necessarily relevant to the claims made in another case. Plaintiffs claim is without merit as neither the witnesses nor the documents are responsive to the claims in this matter.  Plaintiff's counsel concedes it is proceeding "upon information and belief" provided and supplied by cohorts from the companion case of *Freshwater et al., v. Mount Vernon City School District Board of Education, Case No. 2:09CV464,* who have a common cause to damage John Freshwater.   Further, Evy Oxenford, Darcy Miller nor Dr. Patrick Johnston were ever declared as a witness in this Court's Final PreTrial Order (Doc. 85) as previous counsel for John Freshwater made a decision not to include Darcy Miller, Evy Oxenford or Dr. Johnston as a witness.

John Freshwater and the undersigned have been responsive to Plaintiffs discovery request in total and with complete candor.  It is important to grasp the fact that a witness or document relevant in the state hearing may not be relevant in this matter.

**C. Response To "Neither Mr. Freshwater Nor Mr. Hamilton Paid The Monetary Sanctions That This Court Ordered."**

John Freshwater and the undersigned made every reasonable effort to scrabble together that which was possible to comply with the Court's Order.  John Freshwater and the undersigned continue to dispute the reasonableness of the fees asserted by Plaintiff's counsel.  As the undersigned holds unfiled liens and a deed to the Freshwater Family farm both John Freshwater and the undersigned complied as best they could with the resources they have available.

### Conclusion

Truth is everything, truth shall set one free and both John Freshwater and the undersigned will follow truth wherever it may lead.  Truth can be complicated and vulnerable to misinterpretation.  John Freshwater and the undersigned have been castigated unfairly and unjustly despite simply telling the truth and it is requested by both, that the truth be investigated and determined with as much zeal as has been invested in speculation.  Accordingly, reconsideration of this Court's Opinion and Order are requested.

Respectfully submitted,

s/ R. Kelly Hamilton__
The Law Office of R. Kelly Hamilton, LLC (0066403)
**Office:**  4030 Broadway, Grove City, Ohio 43123
**Mail to**: P.O. Box 824, Grove City, Ohio 43123
Phone 614-875-4174
Email:  hamiltonlaw@sbcglobal.net

### CERTIFICATE OF SERVICE

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

I hereby certify that on July 13, 2010, I electronically filed the foregoing COUNSEL'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE

<u>MOTION SEEKING COURT'S RECONSIDERATION OF OPINION AND ORDER ISSUED JUNE 1, 2010 (DOC. 107)</u>, with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

<u>s/ R. Kelly Hamilton</u>
The Law Office of R. Kelly Hamilton, LLC (0066403)